Afshin BAHRAMPOUR,
Plaintiff–Appellant,

v.

R.O. LAMPERT, Superintendent; Debbie Holland; Teresa Hicks; Kathy Stevens, Defendants–Appellees.

No. 02–35194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2003.

Filed Jan. 13, 2004.

David J. Burman and Signe H. Brunstad, Perkins Coie LLP, Seattle, WA, for the plaintiff-appellant.

Steven R. Powers, Oregon Department of Justice, Salem, OR, for the defendants-appellees.

Before: GOODWIN, ALARCÓN, and RAWLINSON, Circuit Judges.

ALARCÓN, Circuit Judge:

Afshin Bahrampour seeks reversal of the summary judgment entered in favor of the prison officials of the Oregon Department of Corrections (collectively "ODC"). In his pro se complaint, Mr. Bahrampour alleged that ODC violated his First and Fourteenth Amendment rights to freedom of speech and due process by refusing to deliver certain pieces of mail to him. In a separate, supplemental claim, he alleged that this conduct also violated his state constitutional right to freedom of speech under Article 1, Section 8 of the Oregon Constitution.

We affirm the portion of the judgment regarding Mr. Bahrampour's § 1983 claim. We vacate in part and remand because the district court failed to consider Mr. Bahrampour's supplemental state law claim.

I

Afshin Bahrampour is an inmate at the Snake River Correctional Institution in Ontario, Oregon. He subscribed to the Green Lantern comic book, and purchased issues of Muscle Elegance magazine and White Dwarf magazine. ODC refused to deliver the Green Lantern comic book because prison regulations prohibited the receipt of bulk mail. ODC subsequently purchased a subscription to the Green Lantern comic book for Mr. Bahrampour after the bulk mail regulation at issue was declared unconstitutional. ODC rejected issue number eight of Muscle Elegance magazine due to its sexual content. ODC cited "[a]dvertisements—portrayal of actual or simulated sexual acts or behaviors" as the basis of its rejection of Muscle Elegance magazine. ODC rejected the October 2000, December 2000, and January 2001 issues of White Dwarf magazine because of their role-playing content. Mr. Bahrampour contested the rejections of Muscle Elegance magazine and White Dwarf magazine in administrative proceedings. ODC's actions were upheld.

Oregon Administrative Rule ("OAR") No. 291–131–0035 prohibits prisoners from receiving certain types of mail. Section (1) excludes material containing portrayals of certain actual or simulated sexual acts or behaviors as "prohibited mail which shall be confiscated or returned to the sender." Such material still "may be admitted if it has scholarly value, or general social or literary value." Section (2) prohibits receipt of material that "contains role-playing or similar fantasy games or materials." Although the restriction on the receipt of sexually explicit materials is quite detailed, role-playing and similar fantasy games are neither defined nor described in the regulations. When this action was initiated, OAR No. 291–131–0025(8) prohibited the receipt by a prisoner of bulk mail. Receipt of postal mail "sent by express mail, priority mail, first class mail, or periodicals mail" was permitted.

■ ODC submitted an affidavit from Supervisor Kathy Stevens regarding the purpose and implementation of the mail rules, and an affidavit from expert witness Dr. Neil M. Malamuth regarding the effect of sexually explicit materials on prison inmates. Supervisor Stevens stated that the materials would be highly valued as barter and "may result in prohibited sexual activity or unwanted sexual behavior, including rape." In Dr. Malamuth's opinion, the regulations are justified "because of the risks such material presents in increasing aggressive and inappropriate tendencies and behaviors by inmates." He concluded that the risks are amplified in the prison setting due to the lack of "socially sanctioned sexual outlets," and the lack of the moderating influences of family and nonaggressive peers.

■ ODC produced an affidavit from Superintendent Robert O. Lampert, in

which he "explain[ed] the reason[s] why ODC prohibits 'role-playing or similar fantasy games or materials.'" Superintendent Lampert stated that the role-playing prohibition is intended to prevent inmates from placing themselves in fantasy roles that reduce accountability and substitute raw power for legitimate authority. He also noted that role-playing games often contain dice, which are prohibited gambling paraphernalia. Superintendent Lampert stated that "if dice are possessed for playing [a role-playing game], either gambling will soon become a part of the game, or the dice will be utilized for other gambling purposes."

Mr. Bahrampour asserted in his complaint that ODC's restrictions on prisoner mail violated his First and Fourteenth Amendment rights. He also filed a supplemental state law claim under Article 1, Section 8 of the Oregon Constitution. The court denied Mr. Bahrampour's motions for partial summary judgment and a preliminary injunction. The district court granted ODC's motion for summary judgment. The district court dismissed the action without explicitly disposing of the supplemental state law claim. Mr. Bahrampour has timely appealed the court's final judgment pursuant to 28 U.S.C. § 1291.

## II

Mr. Bahrampour contends that summary judgment was improper regarding his § 1983 claim because the regulations have been applied inconsistently. He also argues that the district court erred in failing to make findings regarding whether the restricted materials contained sexually explicit or role-playing content. The district court stated "that it is appropriate to defer to defendants' decision that the White Dwarf publication encourages or supports role playing fantasy games. However, I have reviewed publications submitted in camera and find that defendants' determination [is] supported by the record before the court." *Bahrampour v. Lampert,* Civ. No. 01–732–TC, at 6 (D.Or. 2002) (unpublished disposition) (internal citation omitted).

■ We review a grant of summary judgment de novo. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1196(9th Cir.2001). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if 'prison administrators ..., and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (alterations in original) (quoting *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).

■ State prison officials are given deference in day-to-day prison operations due to separation of powers and federalism concerns. *Turner,* 482 U.S. at 84–85, 107 S.Ct. 2254. To defeat summary judgment, Mr. Bahrampour must demonstrate that the regulations are not reasonably related to legitimate penological interests, or that there is a genuine issue of material fact regarding the applicability of the regulations to the materials. *See, e.g. Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 992 (9th Cir.2001). ODC's evidence adequately demonstrates that the regulations support the legitimate penological interests of reducing prohibited behaviors such as sexual aggression and gambling, and maintaining respect for legitimate authority. The regulations prohibit the receipt of materials that contain any amount of sexually explicit or role-playing or fantasy content. Thus, the significant question is whether there is a genuine issue of fact regarding whether the magazines contained any prohibited content.

It is undisputed that two levels of prison officials found the materials violated the regulations. The district court reviewed White Dwarf magazine in camera and agreed with the prison officials that it "encourages or supports role playing fantasy games." We have also reviewed the rejected materials. We agree with the district court that receipt of White Dwarf magazine violates OAR No. 291–131–0035(2)(k). Mr. Bahrampour has produced insufficient evidence to show that viewing the evidence in the light most favorable to him, any reasonable person would conclude that White Dwarf magazine contains no role-playing or fantasy content, or that Muscle Elegance magazine contains no sexually explicit material. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997) (holding that "a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint. Summary judgment may be granted if the evidence is merely colorable ... or is not significantly probative") (internal quotations and citations omitted).

OAR No. 291–131–0035 enumerates the two relevant categories of "Prohibited Mail" to "be confiscated or returned to the sender." Six types of prohibited "Sexual Acts or Behaviors" are listed in Subsection (1)(a)(A) in great detail. The regulations essentially prohibit any "[p]ortrayal of actual or simulated" penetration or stimulation, sexual violence, sexual contact between two people, or sexual contact between a person and an animal. OAR No. 291–131–0035(1)(a)(A)(i–vi). Subsection (1)(e) declares that "[s]exually explicit material may be admitted if it has scholarly value, or general social or literary value." Section (2) lists eleven types of prohibited "Material That Threatens or is Detrimental to the Security, Safety, Health, Good Order or Discipline of the Facility, Inmate Rehabilitation, or Facilitates Criminal Activity." Subsection (2)(k) prohibits receipt of material that "contains role-playing or similar fantasy games or materials." OAR No. 291–131–0035(2)(k). A role-playing game is not defined in the regulations. It is defined in the dictionary as "[a] game in which players assume the roles of characters and act out fantastical adventures, the outcomes of which are partially determined by chance, as by the roll of dice." *The American Heritage Dictionary of the English Language* (4th ed.2000).

White Dwarf magazine is published by Games Workshop, a manufacturer of miniature figurines and accessories used in tabletop war games. The miniatures have predefined attributes and abilities. The outcome of the war game is determined by the roll of dice. The player directs fantastic or futuristic troops in battle as a general or overlord. We are persuaded that White Dwarf magazine fits the definition of role-playing materials prohibited by subsection (2)(k) because it simulates violent battles in an imaginary fantasy world in which the roll of dice determines which leaders have the power to crush their enemies.

ODC prohibited the receipt of Muscle Elegance magazine because it includes portrayals of sexually explicit acts. Muscle Elegance magazine includes advertisements for videos where a bikini-clad woman applies "Brutal Scissors Domination" to a man's face between her legs, and where a woman has locked a man's torso in what is described as "Painful, Erotic Domination." We conclude that there is no genuine issue of material fact in dispute as to whether the regulations prohibit the receipt of Muscle Elegance magazine and White Dwarf magazine because of their sexually explicit or role-playing content.

## III

Mr. Bahrampour asserts that claims of vagueness and over-breadth must be considered separately from the requirement that prison regulations must be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. He claims that past inconsistent applications of the role-playing and sexually explicit regulations demonstrate the vague and overbroad nature of the regulations. Mr. Bahrampour argues that the broad dictionary definition of role-playing encompasses materials such as chess, theatrical scripts, and films.

In *Turner*, the United States Supreme Court applied four factors to determine whether prison regulations were constitutional because they were "reasonably related to legitimate penological interests." *Id.* at 89–90, 107 S.Ct. 2254. The district court applied the *Turner* factors and concluded that the restrictions on the receipt of role-playing and sexually explicit materials were "constitutional even if they do in some minor respect infringe on plaintiff's First Amendment rights." *Bahrampour v. Lampert*, at 12.

We have recognized that inmates do not give up their constitutional rights when they walk through the prison gates. *Morrison v. Hall*, 261 F.3d 896, 900–01 (9th Cir.2001). Some rights are incompatible with incarceration, but others must be protected to the fullest extent possible while still maintaining a safe, efficient, and effective prison environment. *Id.* at 901. We have previously applied the four-part *Turner* analysis to determine whether prison regulations impermissibly infringe on inmates' constitutional rights. *E.g., id.* at 900–05, 907 (determining that commercial bulk mail prohibitions are unconstitutional, but that return address requirements are permitted); *Prison Legal News v. Cook*, 238 F.3d 1145, 1149–53 (9th Cir. 2001) (holding that prohibiting non-profit

bulk mail is unconstitutional). The *Turner* analysis applies equally to facial and "as applied" challenges. *Morrison v. Hall*, 261 F.3d at 905, 907.

First, the regulations must be content neutral and rationally connected to a legitimate penological interest. *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254. The link cannot be so tenuous that the application is irrational or arbitrary. *Id.* In the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered to be content neutral. *Thornburgh v. Abbott*, 490 U.S. 401, 415–16, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

The next consideration "is whether there are alternative means of exercising the right that remain open to prison inmates. Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Turner*, 482 U.S. at 90, 107 S.Ct. 2254 (alteration in original) (internal quotations and citations omitted). In *Turner*, a regulation barring "communication only with a limited class of other people with whom prison officials have particular cause to be concerned" was upheld because it did "not deprive prisoners of all means of expression." *Id.* at 92, 107 S.Ct. 2254.

The third factor requires an examination of the potential effects on the guards, other inmates, and prison resources if the asserted right is protected by the courts. *Id.* at 90, 107 S.Ct. 2254. If accommodations for a constitutional right would cause significant changes within the prison environment, the courts should give deference to the prison officials who are responsible for safe, effective, and efficient administration of the prison system. *Id.*

■ The final factor focuses on alternative solutions that would preserve the constitutional rights of the inmate. *Id.* If there are easily implemented and equally effective alternatives to the challenged regulations, the court may conclude that the regulations are an "exaggerated response" to the legitimate governmental interest. *Id.* If an inmate provides an alternative solution that will protect his rights "at *de minimis* cost to valid penological interests," it likewise is evidence of an "exaggerated response." *Id.* at 90–91, 107 S.Ct. 2254. If there are no obvious alternatives, and if the inmate only presents solutions that will negatively impact valid penological interests, then courts will view the absence of ready alternatives as evidence of a reasonable regulation. *Id.*

ODC presented evidence demonstrating that there is a rational connection between the availability of sexually explicit materials and harmful inmate behavior such as rape and other forms of sexual predation. ODC has also presented evidence that there is a rational connection between role-playing materials that are based on the impact of simulated physical power used to obtain dominance over others, as opposed to reliance on legitimate authority, and the harmful behavior that can result in a prison, including gambling. Superintendent Lampert declared in his affidavit that the failure to pay gambling debts results in violent debt collection activities. These categorical restrictions are neutral because they target the effects of the particular types of materials, rather than simply prohibiting broad selections of innocuous materials. Inmates may exercise their free speech rights in many ways that are not prohibited. Mr. Bahrampour can play chess and read about chess in lieu of playing and reading about role-playing games. OAR No. 291–131–0035(1) permits an inmate to receive publications that show nudes or bodybuilders not engaging in, or simulating, sexual acts or behaviors, or

that have "scholarly value, or general social or literary value."

All four of the *Turner* factors weigh in favor of ODC. Mr. Bahrampour has not demonstrated that the regulations are irrational or unreasonable, or that there are alternative solutions that are easy, obvious, and of "*de minimis* cost to valid penological interests." *Turner,* 482 U.S. at 90–91, 107 S.Ct. 2254. We conclude, therefore, that the regulations and ODC actions pertaining to sexually explicit and role-playing materials are constitutional.

## IV

■ Mr. Bahrampour contends that the prison officials are not entitled to qualified immunity regarding their rejection of the Green Lantern comic book subscription. He asserts that ODC improperly relied on unpublished district court opinions in enforcing its bulk mail regulation, and ignored a published federal district court decision holding bulk mail restrictions unconstitutional. We review a district court's determination of qualified immunity de novo. *Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir.1996). A qualified immunity affirmative defense is subject to a two-step analysis. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1056 (9th Cir.2003). The first step is to determine whether the alleged actions are unconstitutional as a matter of law. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If so, the next step is to analyze whether the defendants are entitled to qualified immunity because the rights asserted were not clearly established at the time. *Id.* The *Saucier* order of analysis is significant because it serves to clarify the constitutional rights at issue, providing officials with prospective guidance as to the constitutionality of their conduct. *See id.* When a court merely

observes that the law is unsettled, without deciding whether the alleged conduct is unconstitutional, it provides no such guidance. *Id.*

■ We have concluded that the rejection of Muscle Elegance magazine and White Dwarf magazine was not unconstitutional. The restriction on the receipt of bulk mail, however, was held to be unconstitutional in *Morrison v. Hall,* decided eighteen months after ODC rejected the Green Lantern comic book subscription. 261 F.3d at 902–04. Because ODC's conduct was unconstitutional, we must determine whether pursuant to *Saucier,* such unconstitutionality was clearly established when ODC rejected the Green Lantern comic book. 533 U.S. at 201, 121 S.Ct. 2151. The district court determined that in forming its regulations, ODC properly relied on unpublished opinions, despite their lack of binding precedential effect. ODC argues before this Court that unpublished decisions can be considered in determining whether the law was clearly established. We agree. In *Sorrels v. McKee,* 290 F.3d 965 (9th Cir.2002), we considered two unpublished federal district court cases declaring similar regulations unconstitutional, and held that those dispositions "[a]t most . . . show that the law was in the process of becoming established." *Id.* at 971.

When Mr. Bahrampour's subscription to the Green Lantern comic book was rejected in January 2000, there was no appellate decision that held that restrictions on the receipt of bulk mail were unconstitutional. One federal district court decision from a different district had held that a similar regulation was unconstitutional. *Miniken v. Walter,* 978 F.Supp. 1356, 1364 (E.D.Wash.1997). Two unpublished decisions from the United States District Court for the District of Oregon, however, had held that the ODC bulk mail regulations at issue were constitutional. *Hunter v. Baldwin,* Civ. No. 93–1579–MFM (D.Or. 1995) (unpublished decision), *aff'd on other grounds,* 78 F.3d 593, 1996 WL 95046, at *1 (9th Cir.1996) (unpublished table disposition); *Morrison v. Hall,* Civ. No. 93–6383–HO (D.Or.1998) (unpublished decision). Thirteen months after ODC rejected the Green Lantern comic book, we held that prohibiting inmates' receipt of *nonprofit* bulk mail was unconstitutional, noting that "[t]he speech at issue is core protected speech, not commercial speech or speech whose content is objectionable on security or other grounds." *Prison Legal News,* 238 F.3d at 1149, 1153. We also held in *Prison Legal News* that "[b]ecause the contours of [the constitutional right at issue] were not sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right, the law in this case was not clearly established." *Id.* at 1152(third and fourth alterations in original) (internal quotations and citations omitted). Reasonable prison officials would have no basis for assuming that regulations prohibiting bulk mail were unconstitutional in the face of two district court decisions from the district in which the prison is located which had concluded that the precise regulations at issue were not unconstitutional. The fact that there was a conflict in the views of district court judges on the issue demonstrates that the constitutionality of the regulations was not clearly established until this court held, eighteen months later, that prohibiting the receipt of commercial bulk mail is unconstitutional. *Morrison v. Hall,* 261 F.3d at 902–04. The district court did not err in its determination that the prison officials are entitled to qualified immunity because prison inmates had no clearly established right to receive commercial bulk mail at the time of the rejection of the Green Lantern comic book subscription.

## V

■ Mr. Bahrampour also argues that the district court improperly dismissed the civil action without addressing his supplemental state law claim under Article 1, Section 8 of the Oregon Constitution. The district court did not refer to the state law claim in its order, nor did it exercise its discretion to accept or decline supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a), (c).

Mr. Bahrampour used a court-issued § 1983 complaint form to initiate this action. On the complaint form, Mr. Bahrampour's sixth claim clearly states that "[d]ue process and Art. 1 Section 8 of the Oregon Constitution in application are violated by [ODC's] actions. [ ]Under Oregon law the free speech 'of any kind' may not be squashed [sic] unless historical exception or harmful effects allow such bans. Here the Oregon Constitution may be more protective of inmates['] free speech rights than the [United States] Constitution[,] thus Oregon does not allow due course or process when it allows [ODC] to violate its citizens['] guaranteed rights." ODC did not address Mr. Bahrampour's sixth claim in its motion for summary judgment. Mr. Bahrampour expressly referred to his sixth claim in his opposition to the ODC's motion for summary judgment. In a section entitled "Reiteration of plaintiff's claims," Mr. Bahrampour states that "Claim # 6—Attempts to incorporate Oregon's Art. 1 Sec. 8 which affords greater protection than U.S. First Amendment to free speech by requiring 'a showing of harm' and 'focusing on the effects' of such speech."

■ The federal supplemental jurisdiction statute provides as follows: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir.2003) (internal quotations and citations omitted). In exercising its discretion to decline supplemental jurisdiction, a district court must undertake a case-specific analysis to determine whether declining supplemental jurisdiction "comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness and comity." *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557–58 (9th Cir.1994) (alteration in original) (internal quotations and citations omitted). A court may decline to exercise jurisdiction over a supplemental state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). *See Executive Software*, 24 F.3d at 1560 (concluding "that Congress intended that, outside of circumstances *already* recognized under current law that are codified in subsections (c)(1)-(c)(3), any *further* extension of *Gibbs* through subsection (c)(4) should be undertaken only when the district court both

articulates 'compelling reasons' for declining jurisdiction and identifies how the situation that it confronts is 'exceptional' ") (quoting § 1367) (emphasis in original). The district court did not set forth any reasons for failing to exercise its jurisdiction over Mr. Bahrampour's supplemental state law claim.

Mr. Bahrampour's state law claim is related to his federal claims and forms part of the same case or controversy. Because the district court did not indicate the basis for declining to exercise its jurisdiction over Mr. Bahrampour's state law claim, we must vacate and remand this matter for a ruling on the merits, or an order consistent with the requirements of § 1367(c).

### Conclusion

Summary judgment was appropriate in this matter as to Mr. Bahrampour's § 1983 claim that the prison regulations violated his rights under the First and Fourteenth Amendments. The district court properly concluded that ODC did not violate Mr. Bahrampour's federal constitutional rights by rejecting sexually explicit and role-playing materials because the regulations were reasonably related to legitimate penological interests.

The ODC regulations violated Mr. Bahrampour's First Amendment right to receive commercial bulk mail. Because the right of inmates to receive commercial bulk mail was not clearly established at the time of the violation, however, the prison officials are entitled to qualified immunity.

We affirm the portion of the judgment regarding Mr. Bahrampour's § 1983 claim. We vacate the judgment in part and remand with directions that the district court rule on the merits of the supplemental state law claim, or expressly indicate its basis for declining to exercise its supplemental jurisdiction pursuant to § 1367(c).

**AFFIRMED** in part, **VACATED** in part, and **REMANDED**.