No. 02-325

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 5

RICHARD J. LOSLEBEN,

        Plaintiff and Appellant,

    v.

JIM OPPEDAHL, JEFF BRYSON,
WAYNE CAPP, AND STATE OF MONTANA,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV-00-102(X)
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Howard F. Strause and Lawrence A. Anderson, Attorneys at Law,
Great Falls, Montana

        For Respondents:

                Neil E. Ugrin and Mark F. Higgins,  Ugrin, Alexander,
Zadick & Higgins, P.C., Great Falls, Montana

Submitted on Briefs:   October 10, 2002

Decided:   January 28, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Plaintiff Richard J. Losleben (Losleben) appeals the February 28, 2002 order of the Eighth Judicial District Court, Cascade County, granting qualified immunity to Defendant Wayne Capp (Capp), dismissing Losleben's 42 U.S.C. § 1983 claim as to Defendant Capp, and denying Losleben's motion for partial summary judgment. We affirm and remand.

¶2 Losleben raises the following issues on appeal:

¶3 1. Did the District Court err in granting Defendant Capp qualified immunity on the basis that it was not clearly established at the time of Losleben's discharge from employment that the Fourteenth Amendment's Equal Protection Clause gives rise to a cause of action on behalf of a "class of one," where the claimant does not allege membership in a class or group, but asserts that vindictiveness motivated a government official to treat him differently than others similarly situated?

¶4 2. Did the District Court err in denying Losleben's motion seeking partial summary judgment that he did not violate Hunt's constitutional right to counsel, nor hinder the prosecution of her co-conspirators, on the basis that such contentions were surrounded by disputed issues of material fact? For the reasons set forth herein, we decline to address the second issue raised by Losleben.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 Richard Losleben began his employment with the State of Montana as a Gambling Investigator in 1983, and at the time of his termination from employment on May 12, 1999, was a criminal investigator for the Gambling Control Division of the Montana Department

2

of Justice. Following an unsuccessful grievance of his termination before the Montana Attorney General, Losleben filed a complaint in state district court pursuant to 42 U.S.C. § 1983, alleging that his former supervisors, Jim Oppedahl (Oppedahl), administrator of the Gambling Control Division, Jeff Bryson (Bryson), Bureau Chief of the Gambling Control Division, and Wayne Capp (Capp), District Supervisor of the Gambling Control Division, violated his constitutional right to equal protection of the law by engaging in a vindictive and spiteful campaign to terminate his employment. Losleben additionally sought damages for wrongful discharge and emotional distress against the State under state law.

¶6     On behalf of all the defendants, the State answered Losleben's complaint, raising the defense of qualified immunity and alleging that good cause supported Losleben's termination, which was based, in principal part, upon his alleged violation of a suspect's constitutional rights during questioning on September 9 and 10, 1998. According to the State, Losleben continued to interrogate Tena Beavers-Hunt (Hunt), a suspect of a fraudulent gambling conspiracy, after she requested an attorney, thereby violating her constitutional right to counsel as espoused in *Miranda* and the Fifth Amendment of the United States Constitution.

¶7     Losleben responded to the State's contentions by seeking partial summary judgment that he did not violate Hunt's constitutional right to counsel during questioning or hinder the prosecution of Hunt's co-conspirators. In support of his motion, Losleben conceded Hunt invoked her right to counsel after being advised of her *Miranda* rights on September 9, 1998; however, he argued that she continued to discuss the case with him after requesting an

3

attorney, and telephoned him the following day to make a statement. The State opposed Losleben's motion, asserting that disputed issues of material fact precluded summary judgment.

¶8 On August 7, 2001, the State brought its own motion for partial summary judgment, seeking dismissal of Losleben's § 1983 claim on the basis that Oppedahl, Bryson, and Capp were protected by qualified immunity. Losleben subsequently abandoned his civil rights claims against Oppedahl and Bryson, and they were dismissed from the lawsuit.

¶9 On February 28, 2002, the District Court ruled on the parties' respective motions for partial summary judgment. Concluding that Losleben's claim for equal protection as a "class of one" was not clearly established at the time of his termination from employment, nor based upon the arbitrary, intentional, and personally vindictive treatment of a member of a protected class, the court held Capp was entitled to qualified immunity and dismissed him from the case. The court further found Losleben's contentions that he did not violate Hunt's constitutional rights during the custodial interrogations on September 9 and 10, 1998, were surrounded by disputed issues of material fact, and, accordingly, denied his request for partial summary judgment.

¶10 On March 29, 2002, pursuant to Rule 54(b), M.R.Civ.P., the District Court certified its February 28, 2002 judgment entered summarily in favor of Defendant Capp on Losleben's § 1983 claim as final. While the District Court recognized that Losleben's § 1983 claim, and his motion for partial summary judgment that he did not violate the constitutional rights of Hunt during questioning, were based on similar underlying facts, and

4

decided both pursuant to the same February 28, 2002 order, the court ordered certification only as to the § 1983 claim. This notwithstanding, Losleben appeals from both the District Court's order granting qualified immunity to Defendant Capp, as well as its denial of Losleben's motion for partial summary judgment. For the reasons set forth herein, we decline to address Losleben's second issue.

## DISCUSSION

¶11 **Did the District Court err in granting Defendant Capp qualified immunity on the basis that it was not clearly established at the time of Losleben's discharge from employment that the Fourteenth Amendment's Equal Protection Clause gives rise to a cause of action on behalf of a "class of one," where the claimant does not allege membership in a class or group, but asserts that vindictiveness motivated a government official to treat him differently than others similarly situated?**

¶12 Losleben brought this action pursuant to 42 U.S.C. § 1983, alleging that his former supervisor, Wayne Capp, violated his constitutional right to equal protection of the law by treating him differently than others similarly situated. Losleben argues that Capp's discriminatory actions were motivated by a vindictive and spiteful effort to terminate his employment, and, therefore, violated clearly established law that government officials may not intentionally single someone out for abusive treatment. The District Court dismissed Losleben's § 1983 claim as to Defendant Capp, concluding that an equal protection claim for a "class of one" was not clearly established at the time of the alleged misconduct, and, therefore, Capp was entitled to qualified immunity.

¶13 We review a district court's determination of qualified immunity *de novo*. *Bahrampour v. Lampert* (9th Cir. Jan. 13, 2004), ___ F.3d ___, 2004 WL 51313 at * 6. The doctrine of qualified immunity operates to shield government officials performing

5

discretionary functions from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Grossman v. City of Portland* (9ᵗʰ Cir. 1994), 33 F.3d 1200, 1208. "While public officials are thus generally protected from civil liability under the doctrine, the defense will fail when their actions violate law that is clearly established, because 'a reasonably competent public official should know the law governing his conduct.'" *Thompson v. Souza* (9ᵗʰ Cir. 1997), 111 F.3d 694, 698 (citing *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410).

¶14　In determining whether an official is entitled to qualified immunity, we ordinarily begin with a two-part analysis: (1) we consider whether the law governing the official's conduct was clearly established at the time of the alleged misconduct. If established, we proceed to inquire (2) whether, under that law, a reasonable official could have believed his conduct was lawful. If so, the official is entitled to immunity from suit. *Boreen v. Christensen* (1996), 280 Mont. 378, 384, 930 P.2d 67, 70. However, recently, in *Saucier v. Katz* (2001), 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272, 281, the United States Supreme Court instructed that before we can determine whether state officials are entitled to qualified immunity, we must first address the merits of the alleged constitutional violation. The first question we must ask is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281. If we answer this question in the negative, then the inquiry is over and the case should be

6

dismissed–that is, the qualified immunity issue is never reached.  However, if we determine otherwise, we then proceed to the second stage of the *Saucier* analysis and "ask whether the right was clearly established" at the time it was allegedly infringed.  *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156, 150 L.Ed.2d at 282.

¶15    The *Saucier* order of analysis is significant because it serves to clarify the constitutional rights at issue by providing officials with prospective guidance as to the constitutionality of their conduct.  *Bahrampour*, ___ F.3d ___, 2004 WL 51313 at * 6.  When courts merely observe that the law is unsettled, no such guidance is provided. *Bahrampour*, ___ F.3d ___, 2004 WL 51313 at * 6.  Yet, as other courts addressing this issue have noted, determining whether a constitutional claim exists is an uncomfortable task where, as here, the answer depends upon a myriad of facts not yet fully developed.  *See Dirrane v. Brookline Police Dept.* (1st Cir. 2002), 315 F.3d 65, 69-70; and *Koch v. Town of Brattleboro* (2nd Cir. 2002), 287 F.3d 162, 166.  In those  situations, some courts have resolved this difficulty by proceeding directly to the second stage of the *Saucier* analysis. *See Koch*, 287 F.3d at 166 (when convinced that the purported constitutional right violated was not "clearly established," the court retains discretion to refrain from determining whether, under the first step of the *Saucier* test, a constitutional right has been violated at all); and *Ehrlich v. Town of Glastonbury* (2nd Cir. 2003), 348 F.3d 48, 56 (recognizing that

7

moving to the second stage of the *Saucier* analysis is appropriate when the existence of a constitutional violation depends upon the resolution of uncertain state law); *see also Santana v. Calderon* (1ˢᵗ Cir. 2003), 342 F.3d 18, 29-30 (finding that the sequential rule of *Saucier* may not have contemplated situations where the core of the constitutional allegation depends upon unresolved issues of Commonwealth constitutional law).

¶16 In this case, the District Court did not apply the first step of the *Saucier* test, and, to that extent, we conclude it erred. However, because only the issue of qualified immunity has been certified to us pursuant to the District Court's February 28, 2002 order, we will assume a constitutional violation could have occurred under the facts alleged and proceed to the second stage of the *Saucier* analysis. Thus, the sole question on appeal is whether the law in 1999, when Losleben's employment was terminated, clearly recognized equal protection claims brought by a "class of one," so as to give Capp fair warning that his alleged treatment of Losleben was unconstitutional.[1]

¶17 The Equal Protection Clause of the Fourteenth Amendment mandates that government shall not "deny to any person within its jurisdiction equal protection of the laws." U.S. Const. Amend. XIV. "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens 'as *individuals*, not as simply components of a racial, religious, sexual, or national class.'" *Metro Broadcasting, Inc. v.*

---

[1]We note that in *Saucier*, 533 U.S. at 207-208, 121 S.Ct. at 2159, 150 L.Ed.2d at 285, the United States Supreme Court likewise declined to address the first prong of the test it set forth therein, on the basis that it had granted certiorari only to determine whether qualified immunity was appropriate, and not to decide the underlying constitutional issue. We face a similar quandary.

8

*F.C.C.* (1990), 497 U.S. 547, 602, 110 S.Ct. 2997, 3028, 111 L.Ed.2d 445, 486-87 (O'Connor, J., dissenting) (citation omitted), *overruled on other grounds by Adarand Construction, Inc. v. Pena* (1995), 515 U.S. 200, 227, 115 S.Ct. 2097, 2113, 132 L.Ed.2d 158. Thus, a person bringing a claim under the Equal Protection Clause traditionally must show intentional discrimination against him because of membership in a particular class, not merely that he was treated unfairly as an individual.

¶18 Recently, however, in *Village of Willowbrook v. Olech* (2000), 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060, the United States Supreme Court concluded that an equal protection claim may be brought by a claimant as a "class of one," even though the claimant is not a member of a traditionally recognized protected class. *Olech* involved a city's discriminatory behavior in conditioning a property owner's connection to a municipal water supply on the owner's granting of an easement. The property owner brought suit, alleging that the Village of Willowbrook treated her differently from other property owners in the Willowbrook area because of ill will generated by a previous unrelated lawsuit she had filed against the Village. *Olech*, 528 U.S. at 563, 120 S.Ct. at 1074, 145 L.Ed.2d at 1063. The district court dismissed the suit for failure to state a claim because membership in a protected class was not alleged. *Olech*, 528 U.S. at 563, 120 S.Ct. at 1074, 145 L.Ed.2d at 1063. The Seventh Circuit reversed and the Supreme Court granted certiorari to determine whether the Equal Protection Clause could give rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in a class or group. *Olech*, 528 U.S. at 564, 120 S.Ct. at 1074, 145 L.Ed.2d at 1063. In a short *per curiam* opinion, the Supreme Court

affirmed the Seventh Circuit and held that Olech, although a "class of one," had stated a claim for relief under the Equal Protection Clause by alleging that the Village treated her differently than others similarly situated and that there was no rational basis for the difference in treatment. *Olech*, 528 U.S. at 565, 120 S.Ct. at 1075, 145 L.Ed.2d at 1063-1064.

¶19    The *Olech* decision marked the first time in United States history the Supreme Court *explicitly* recognized a "class of one" as a legitimate claim under the Equal Protection Clause.   Although the Court had previously recognized successful equal protection claims brought by ordinary individuals alleging that they had been intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment, all these so-called "class of one" cases were limited to the realm of taxation. *See Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688; *Sioux City Bridge Co. v. Dakota County* (1923), 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340.   None of these cases involved a direct challenge to the assumption that an equal protection claim need not be supported by class membership.  In fact, before *Olech*, the United States Supreme Court had not cited to the *Allegheny* case approvingly when addressing an equal protection claim.  Because narrow in scope, these decisions presented an adequate ground for distinguishing the earlier precedent, and, therefore, failed to provide clearly established authority in the area of equal protection.

¶20    Furthermore, prior to *Olech*, the federal circuit courts had divided on whether an individual could assert an Equal Protection Clause violation if he or she were not a member

10

of a particular class or group. The Sixth Circuit, in *Futernick v. Sumpter Township* (6th Cir. 1996), 78 F.3d 1051, 1060, had rejected the "class of one" theory, holding that a plaintiff's membership in a class was essential to a denial of equal protection. Three years later, in *Bass v. Robinson* (6th Cir. 1999), 167 F.3d 1041, the Sixth Circuit continued to require a claimant to allege class membership to sustain an equal protection claim. *Bass*, 167 F.3d at 1050 (holding that because plaintiff failed to allege invidious discrimination based upon his membership in a protected class, his equal protection claim failed at its inception). Additionally, the Seventh Circuit, just prior to issuing its decision in *Olech*, had held that "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Herro v. City of Milwaukee* (7th Cir. 1995), 44 F.3d 550, 552 (quoting *New Burnham Prairie Homes, Inc. v. Village of Burnham* (7th Cir. 1990), 910 F.2d 1474, 1481). Just four months later, in *Esmail v. Macrane* (7th Cir. 1995), 53 F.3d 176, the Seventh Circuit recognized the expansion of the Fourteenth Amendment's equal protection to include "class of one" claims. In a decision authored by Chief Judge Richard Posner, the Seventh Circuit announced that "vindictive action" on the part of a government employee may provide the basis for an equal protection claim even though an individual is not part of a particular class, and rejected the reasoning of *Herro* and *Prairie Homes*. *Esmail,* 53 F.3d at 180; *see also* Gehan, Shawn M., *With Malice Toward One: Malice and the Substantive Law in "Class of One" Equal Protection Claims in the Wake of*

11

*Village of Willowbrook v. Olech*, 54 ME L. Rev. 329 (2002). The Seventh Circuit's decision in *Olech* followed in 1998.

¶21    In this matter, we are not called upon to decide the viability of Losleben's equal protection claim based on a "class of one," but merely to determine whether the law recognizing such claims was clearly established at the time of Losleben's termination from employment. We conclude that it was not. In addition to the foregoing discussion, we find support for our conclusion in a decision issued by the Tenth Circuit. In *Norton v. Village of Corrales* (10th Cir. 1996), 103 F.3d 928, 934, the Tenth Circuit held public officials had qualified immunity in a suit over a zoning decision which the developer charged was motivated by a certain official's dislike of him. Although not a member of a traditionally protected class, the developer had brought suit alleging a violation of his equal protection rights. In performing its own survey of federal equal protection law, the Tenth Circuit found no relevant authority within its circuit, although it noted the Seventh Circuit's *Esmail* decision, recognizing the viability of an equal protection claim brought by an individual who was not a member of a traditionally protected class, but who alleged that a public official had vindictively denied his request for reissuance of a liquor license. *Norton*, 103 F.3d at 934. However, notwithstanding the *Esmail* decision, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's equal protection claim in this 1996 decision, concluding that "any such equal protection right is not well enough established to hold the individual defendants to knowledge of it."    *Norton*, 103 F.3d at 934.

¶22 Furthermore, a review of recent case law in the Ninth Circuit suggests that courts continue to grapple with the issue of whether membership in a protected class is necessary to establish an equal protection violation. In the recent case, *Serrano v. Francis* (9th Cir. 2003), 345 F.3d 1071, the court explained, "[t]o state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. . . . 'Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.' . . . To avoid summary judgment, [the claimant] 'must produce evidence . . . that the decision was racially motivated.'" *Serrano*, 345 F.3d at 1081-1082 (citations omitted). This analysis appears to be at odds with the *Olech* decision.

¶23 In this case, Losleben's employment was terminated prior to the *Olech* decision, which established the viability of an equal protection claim brought by an individual as a "class of one." Recognizing the division in authority which existed prior to *Olech* and the confusion that continues to loom in this area of the law, we conclude that any equal protection right held by Losleben at the time of his termination from employment was not well enough established to impute knowledge of it to Capp. Thus, Capp is entitled to qualified immunity on this claim. Therefore, we affirm the District Court's dismissal of Defendant Capp from this case.

¶24 **Did the District Court err in denying Losleben's motion seeking partial summary judgment that he did not violate Hunt's constitutional right to counsel, nor hinder the prosecution of her co-conspirators, on the basis that such contentions were surrounded by disputed issues of material fact?**

13

¶25 As a general rule, this Court assumes jurisdiction of an appeal in a civil matter only where a final judgment has been entered. *See* Rule 1(b)(1), M.R.App.P. A judgment is the final determination of the rights of the parties in an action or proceeding. Rule 54(a), M.R.Civ.P. In an action involving multiple claims for relief or multiple parties, such as the case here, a final judgment as to one or more but fewer than all of the claims or parties may be entered only upon an express determination by the District Court that there is no just reason for delay and upon an express direction for entry of judgment. *See* Rule 54(b), M.R.Civ.P. Although the issue of this Court's jurisdiction was not raised by either party, we may address the question *sua sponte*. *Trombley v. Mann*, 2001 MT 154, ¶ 6, 306 Mont. 80, ¶ 6, 30 P.3d 355, ¶ 6.

¶26 The record clearly shows that the District Court's March 29, 2002 order certified its judgment in favor of Defendant Capp on Losleben's § 1983 claim as final. It is equally clear, however, that the District Court's February 28, 2002 order denying summary judgment to Losleben concerning his claim that he did not violate the constitutional rights of Hunt during questioning was not a final judgment because it failed to adjudicate the rights of the parties in this action. *See* Rule 54(a), M.R.Civ.P. Because there was no "final judgment," as defined by Rule 54(a), M.R.Civ.P., on this claim, and the District Court did not certify its judgment denying summary judgment to Losleben as final pursuant to Rule 54(b), M.R.Civ.P., no appeal on this issue was available under Rule 1(b)(1), M.R.App.P. *See Trombley*, ¶ 10. Accordingly, we hold that the February 28, 2002 order denying Losleben's motion for partial summary judgment was not appealable, and remand this matter to the

District Court for further proceedings on Losleben's wrongful discharge claim against the State.

¶27    Affirmed and remanded.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART