HART, District Judge,
dissenting:
The majority’s conclusion that the decision to bar Bretches’ book was intermingled with an improper determination that the content was objectionable is not warranted. Permission was denied for Bretches to engage in the business of publishing and his book was banned for reasons that are content neutral under applicable pi'ecedents. The attachments to plaintiffs complaint considered along with the allegations in the body of the complaint provide facts that are sufficient to conclusively determine that defendants’ challenged actions were content neutral. Accordingly, I respectfully dissent.
Plaintiffs book, entitled Dog OWar, is about attack-dog breeding, a dog mauling death and the criminal prosecution of two persons charged as responsible. Bretches, who participated in the breeding of attack dogs, was not charged in the dog mauling prosecution, but wrote critically about the proceedings and some members of the community.
This suit against the former and the current warden of Pelican Bay State Prison (“PBSP”), where plaintiff is incarcerated, names both defendants in their individual and official capacities. In addition to seeking damages from Kirkland and Ho-rel, plaintiff seeks an injunction barring banning of the book; barring the Warden’s declaration that the book constitutes “contraband;” and requiring the Warden to set aside a Rule violation and punishment.
*679 Allegations in a complaint will not be accepted as true if inconsistent with exhibits attached to the complaint. Ott v. Home Sav. & Loan Ass’n, 265 F.2d 643, 646 (9th Cir.1958); 5A Charles Alan Wright & Arthur R. Miller, Federal Prac. & Proc. Civil 3d § 1327 at 450-51 (2004). Attached to the pleadings are the administrative rulings and plaintiffs administrative filings. This includes a copy of plaintiffs contract with the internet publisher that published the book and some excerpts from the book. Plaintiff submitted his manuscript to iUn-iverse, which made the book available through a number of internet sites that sell books. Under plaintiffs contract with iUniverse, plaintiff was to receive royalties equal to 20% of the sales price of all books, except his own complementary and discounted copies. Plaintiff testified at his administrative hearing that he does not get paid for the manuscript, that he provided it for free to iUniverse, and iUniv-erse makes all the profits. This testimony was rejected as noncredible because, when contacted, an iUniverse representative stated iUniverse never keeps the royalties, but will permit the author to designate that the royalties be donated to a charity instead of being paid to the author.
Members of PBSP’s Institution Gang Investigations Unit seized two copies of the book that had been ordered for plaintiff. The copies were stopped before being delivered to plaintiff and were retained by the Investigations Unit. A member of the Unit requested that the book be banned at PBSP. This request was approved by three superiors, including Warden Kirkland. The request describes the book, how it was published and some of its contents. It is mentioned that the book is an unauthorized business venture in violation of Cal. Code Regs. tit. 15, § 3024(a). Content that is characterized as violating prison regulations is described. Derogatory statements about another prisoner who had been involved in the dog business, including that he was a “rat,” “fake,” “sellout” and poor fighter, are deemed violations of § 3004, as disrespectful statements of others that could disrupt orderly operations. “[Ijnflammatory” statements about a correctional officer are also labeled as a violation of this regulation. Negative statements about San Francisco homosexuals are labeled as a violation of § 3004(c)’s prohibition of forms of discrimination.
The ruling states in part:
Based on the above information, it is requested that the book be identified as contraband according to the CCR, Title 15, § 3006, Subsection (c), Paragraph (16), and banned from being admitted or retained by inmates at the prison. The original material from the package shall be retained by the institution pending any potential appeal or litigation. It is requested that the basis for the ban be due to content that is considered to be a threat to legitimate penological interests (as contained in the CCR), rather than any personal opinions or inaccurate information that inmate Bretches may have expressed through legitimate freedom of expression. It is also requested that all of inmate Bretches’ funds be scrutinized to ensure that he is not the recipient of money or favors associated with the book’s publication and distribution, i.e. money sent from publishers, such as iUniverse, or persons he acknowledges in the book as a contributing party to its publication or preparation (see attached list).
Plaintiff was given notice of a rule violation based on engaging in revenue-generating activity without permission in violation of § 3024(a). Plaintiff subsequently requested permission to “make money” *680 from the book. An associate warden denied that request.
Plaintiff filed an appeal to Warden Kirkland, challenging the banning of the book, the denial of permission to engage in a business and the disciplinary decision. Alternatively, plaintiff requested that the seized copies be sent to relatives or that he be reimbursed if the copies had been destroyed. Except as to the disposition of the seized copies, the appeal was denied by Kirkland. Kirkland stated: “The inmate’s request that he be allowed to profit from his book should he ever make any money is DENIED. This is an anticipated action. The inmate is either asking to profit from his book or not, whether he ever makes money is irrelevant. The inmate has not been forthright with staff regarding this book and it is not believable that he did not sign a contract with the publishing company and was not aware of how his royalties would be dispersed. The inmate’s request that the rules be changed to allow him and other inmates to legally earn money by writing or drawing for a business or publication, if not owned or run by the inmate is DENIED. The CCR, Title 15, Section 3024, already allows for this.”
Plaintiff appealed Kirkland’s decision to the Director’s level, which is the final level of administrative appeal. The appeal was denied. The decision states:
Upon review of submitted documentation and after consideration of the arguments presented a determination has been made that the appellant was conducting a business without prior authorization. It has also been determined that the institution has acted appropriately to later deny authorization to conduct the business since the inmate’s book contains language that is offensive to certain groups and is a transparent attempt to profit from a crime and the notoriety created by that crime, even though the appellant is not a defendant in that case.
While the appellant contends that the book could be edited and the offensive language removed, that does not change the fact that this book exploits public interest in a crime in which the author claims some involvement through his role in breeding the dogs involved. This is the basis for his credibility on the topic in question. The publication of the book is a business and does require approval that was neither sought nor received in the first place and is now being denied for the reasons given above.
The CaLCode Regs. tit. 15, §§ 3006, 3024, 3152, and 3250.1, are cited.
Four actions are challenged: (a) banning the book as contraband; (b) denying plaintiff permission to engage in the business of publishing the book; imposing discipline on plaintiff in the form of a 30-day credit forfeiture; and preventing plaintiff from having a book he has written published for no compensation. Plaintiff seeks damages from former Warden Kirkland in his individual capacity; damages from current Warden Horel in his individual capacity; and injunctive relief against Warden Horel in his official capacity.
As the majority recognizes, some parts of this lawsuit should be dismissed for reasons distinct from substantive First Amendment issues. The official capacity claim against defendant Kirkland fails because he is no longer the warden. The individual capacity claim against Horel fails because the administrative actions taken are specifically alleged and Horel did not personally participate in any of them. See Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); Tate v. Woodford, 2008 WL 590499, at *2 (E.D.Cal. Feb. 29, 2008).
*681 Any challenge to the disciplinary action (a 30-day credit forfeiture), whether part of a damages claim or the request for injunctive relief, is not cognizable in plaintiffs § 1983 lawsuit because the credit forfeiture has not been overturned. See Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Pryer v. Evans, 2008 WL 131604, at *1-2 (N.D.Cal. Jan. 11, 2008), reconsideration denied, 2008 WL 2694004, at *3 (N.D.Cal. July 7,2008). Moreover, any challenge to the imposition of the credit forfeiture would have to be pursued in a proeedurally proper habeas corpus proceeding. Pryer, 2008 WL 131604, at *2; Martin v. Sullivan, 2007 WL 2904285, at *8 (E.D.Cal. Oct. 4, 2007).
Also, on the facts alleged, plaintiff has no claim for being precluded from writing a book and submitting it for publication separate and distinct from any revenue-generating activity. Plaintiff specifically alleges the actions taken by the prison officials, including providing copies of the particular administrative decisions that were made. The ban only prohibits the book, in its present form, from being at PBSP. The request to engage in publishing activity concerned doing such activity to “make money.” The denial was for permission to engage in a business, revenue-generating activity of publishing the book. Plaintiff has not been denied permission to allow the book to continue to be distributed outside PBSP as long as he is not engaging in business activity nor has he been denied permission to write any new book.[1] Therefore, there is no basis for seeking damages on that ground or any related injunctive or declaratory relief.
The only actions that need be considered are the denial of permission to engage in the business activity of publishing and the banning of the book at PBSP. These issues must be considered both in terms of a damages claim against Kirkland and official capacity injunctive relief against Ho-rel.
“When a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.” Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir.2008) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).
Turner sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:
(1) Whether there is a “ ‘valid, rational connection’ between the prison regulation and the legitimate governmental interest put forward to justify it;”
(2) Whether there are “alternative means of exercising the right that remain open to prison inmates;”
(3) Whether “accommodation of the asserted constitutional right” will “impact ... guards and other inmates, and on the allocation of prison resources generally;” and
(4) Whether there is an “absence of ready alternatives” versus the “existence of obvious, easy alternatives.”
Shakur, 514 F.3d at 884 (quoting Turner, 482 U.S. at 89-90, 107 S.Ct. 2254 (quoting Block v. Rutherford, 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984))). The analysis applies equally to “as applied” and facial challenges. Bahrampour v. Lampert, 356 F.3d 969, 975 (9th Cir.2004). At oral argument, plaintiff clarified that he is challenging the business activity rule as applied.
*682 The district court dismissed the case pursuant to § 1915A(b)(l) for failing to state a claim. The standard is the same as applies to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). See Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir.2007); 5C Charles Alan Wright & Arthur R. Miller, Federal Prac. & Proc. Civil 3d § 1360 at 73 n.4 (2004). Ordinarily, the penological justifications considered in the Turner analysis are raised by the defendant in the district court. Armstrong v. Davis, 275 F.3d 849, 874 (9th Cir.2001). However, penological justifications do not necessarily require extensive factual development. The first factor requires only a rational relationship between the governmental objective and the regulation or action. Ashker v. California Dep’t of Corr., 350 F.3d 917, 922 (9th Cir.2003); California First Amendment Coal. v. Woodford, 299 F.3d 868, 880-81 (9th Cir.2002) (quoting Morrison v. Hall, 261 F.3d 896, 902 (9th Cir.2001)). “Ordinarily, ‘even in the absence of institution-specific or general social science evidence, as long as it is plausible that prison officials believed the policy would further a legitimate objective, the governmental defendant should prevail on Turner’s first prong.’ ” Woodford, 299 F.3d at 881 (quoting Frost v. Symington, 197 F.3d 348, 355 (9th Cir.1999)). A dismissal on the pleadings is possible if a “common-sense connection” exists between a legitimate penological objective and the challenged regulation or action. Whitmire v. Arizona, 298 F.3d 1134, 1136 (9th Cir.2002); Campbell v. Alameida, 2006 WL 2734330, at *2 (N.D.Cal. Sept. 25, 2006), aff'd by unpublished order, 2008 WL 4415151 (9th Cir. Sept. 24, 2008).
The complaint was screened pursuant to 28 U.S.C. § 1915A. In such a review, it is appropriate for the district court to raise on its own apparent penological objectives that have a common-sense connection to a challenged action or regulation. Moreover, in this case, plaintiff attached the pertinent administrative decisions to his pleadings and those decisions clearly state the reasons for the actions taken. The penological justifications stated in those decisions were properly before the district court for consideration. To the extent the reasons stated in the administrative decisions are based on rules with commonsense connections that do not require further factual development, the Turner analysis may properly be considered.
Because this case implicates First Amendment speech concerns, it is required that the legitimate penological interests considered under the first factor of the Turner analysis be content neutral. Bahrampour, 356 F.3d at 975. The majority’s decision is primarily based on defendants’ alleged failure to satisfy this content neutral requirement. For Turner analysis, content neutrality is different than in the usual First Amendment case because a prisoner’s First Amendment rights are limited. “In the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered to be content neutral.” Bahrampour, 356 F.3d at 975 (citing Thornburgh v. Abbott, 490 U.S. 401, 415-16, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). The focus is generally on the effects that are targeted and whether those effects are targeted for legitimate penological reasons. See Bahrampour, 356 F.3d at 976. “[T]o meet Turner’s, ‘neutrality” test, ‘the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are ‘neutral’ in the technical sense in which we meant and used that term in Turner.’ ” Mauro v. *683 Arpaio, 188 F.3d 1054, 1059 (9th Cir.1999) (en banc) (quoting Abbott, 490 U.S. at 415-16, 109 S.Ct. 1874).
In denying permission to engage in the business activity of publishing, Kirkland’s stated reason for denying plaintiffs request to make money was that plaintiffs statements to prison officials about engaging in that activity were not forthright and he had not been truthful when he stated he had not signed a contract and was not aware of royalties he would be paid. Those are reasons totally unrelated to the contents of the book. There is no allegation that Kirkland’s actual reasons for denying permission were other than as stated in his ruling. Thus, Kirkland’s stated reasons for denying permission to engage in business activity were content neutral.
Kirkland initially approved the banning memorandum and subsequently readopted that view in his second decision. Kirkland’s additional stated reasons for banning the book are that the book violates § 3004 which prohibits disrespecting members of the prison community through derogatory and inflammatory statements about another prisoner and a correctional officer and discrimination in the form of negative statements about homosexuals. There is a common-sense connection between banning such statements and preventing fights, disruptions or violence in prisons. Cf. Bradley v. Hall, 64 F.3d 1276, 1280 (9th Cir.1995); Nelson v. Almager, 2009 WL 306695, at *6 (S.D.Cal. Feb. 6, 2009); Brodheim v. Cry, 2007 WL 2118935, at *8 (E.D.Cal. July 20, 2007), mag. j. report adopted, 2007 WL 2789467 (E.D.Cal. Sept. 25, 2007). Plaintiff does not allege facts or make an argument that overcomes this common-sense connection.
Plaintiff alleges that banning the book “constitutes an unfortunate act of retaliation by the Warden, who is upset with the content of the book.” Kirkland, however, was entitled to be upset with' the book for being inconsistent with legitimate penological interests. Plaintiff does not allege that he was upset with it for pretextual, content-based reasons that would not be constitutionally permissible. The contents of the pleadings and the attached exhibits establish that Kirkland banned the book from PBSP for content neutral reasons.
The Director level decision must be considered with respect to injunctive relief. The Director’s decision represents the final decision of the Department of Corrections and is the primary decision to consider in determining whether there are appropriate penological justifications for not finding a First Amendment violation that would support granting injunctive relief. This decision combines the reasons for banning the book with the reasons for denying permission to engage in the business activity of publishing it. The majority does not distinguish between the actions and reasoning of Kirkland applicable to the damages claims and the actions and reasoning of the Director level applicable to the official capacity request for injunc-tive relief. The majority does not say where the improper intermingling occurred. Plaintiff does not allege that the reasons stated in that decision were pre-textual.
The Director denied permission because (1) plaintiff failed to request approval before engaging in the business, (2) the book contains the § 3004 violations; and (3) plaintiff is trying to profit from a crime. The decision does not expressly state whether each reason was sufficient by itself, all three were necessary for denying permission, or some lesser combination of reasons would have been sufficient. Reason one is clearly a content neutral reason. Reason two is also content neutral because it is based on promoting respect within the prison and ensuring safety and *684 security for inmates and staff. There is a sufficient commonsense connection with those goals and plaintiff does not allege facts or present arguments to overcome the common-sense connection. The third reason, preventing prisoners from profiting from books specifically about crimes or crimes in which they were involved, is, from a penological perspective, distinct from permitting them to profit from books about other subjects. Deterrence of future crime and rehabilitation of prisoners are legitimate penological interests. Woodford, 299 F.3d at 878. There is a legitimate penological interest in prohibiting prisoners from authoring or publishing materials about criminal activity, which may be directly or indirectly promoting crime. See Ray v. Williams, 2005 WL 697041, at *6 (D.Or. March 24, 2005), mag. j. report adopted, 2005 WL 1429907 (D.Or. June 16, 2005), aff'd by unpublished order, 234 Fed.Appx. 570 (9th Cir.2007). Cf. Abbott, 490 U.S. 401, 109 S.Ct. 1874 (upholding prison regulations that, inter alia, permit banning prisoners from receiving publications that promote criminal activity). All the reasons stated in the Director level determination are content neutral, and any one of them may have been sufficient for denying plaintiff permission to engage in publishing activity.
Cases have held “Son of Sam” laws are content based and violate the First Amendment. See Simon & Schuster, Inc. v. Members N.Y. State Crime Victims Bd., 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); Keenan v. Superior Ct. Los Angeles County, 27 Cal.4th 413, 117 Cal.Rptr.2d 1, 40 P.3d 718 (2002). Those cases concern laws requiring that persons convicted or accused of crimes place in trust for victims any earnings from books about them crimes. Unlike the present case, those cases involve strict scrutiny— not rational relationship — review. The countervailing interest is that of the crime victims — not penological interests. They involve application of ordinary content based analysis, not the special content neutral rule required for Turner analysis.
On the facts alleged, there are content neutral, legitimate penological interests that have a rational relationship to the decisions both denying permission to engage in business activity and banning the book from PBSP. Therefore, the remaining Turner factors must be considered. Plaintiff has other means to communicate his message, particularly in his situation. The book has already been written and is already outside the prison. He has not been denied permission to publish and distribute his book outside prison and without generating revenue for himself. The third Turner factor supports permitting the limitation placed on plaintiffs speech: allowing inmates to engage in business dealings could threaten security by placing a burden on prison administrators; there is a risk plaintiff, as a published author, could wield undue influence over other prisoners; and plaintiff could influence others to engage in illegal activity. As to the fourth factor, an alternative to the rules applied is likely unworkable, and a more realistic alternative is to simply not generate any revenue, which would take the activity outside the business activity regulation.
For the foregoing reasons, plaintiff has no valid claim, for damages or for official capacity injunctive relief, based on being denied permission to engage in the business activity of publishing or because his book was banned from PBSP. I would affirm the district court’s dismissal of this case.

. Copies of the book exist outside PBSP. Plaintiff is not precluded from having a copy edited outside PBSP and sent to him as a method of determining whether an edited version would be deemed contraband, instead of requesting prison officials to act as editors.