# FILED

April 1 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0140

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 106

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GARRY RUSSELL MILLER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2006-0128
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Public Defender, Lisa S. Korchinski, Assistant Public Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Juli M. Pierce, Deputy County Attorney, Billings, Montana

Submitted on Briefs:   February 13, 2008

Decided:   April 1, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Garry Russell Miller was tried and convicted in the District Court for the Thirteenth Judicial District, Yellowstone County, of driving a motor vehicle while under the influence of alcohol and/or drugs, driving while license was suspended or revoked, and operating a motor vehicle without proof of liability insurance in effect.  He now appeals, raising an issue related to one of the jury instructions given at his trial.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2    At approximately midnight on February 15, 2006, Yellowstone County Deputy Sheriff Patrick Korb observed a pickup being driven irregularly on Second Avenue North in Billings, Montana.  At one point, the driver, who Korb later ascertained was Miller, weaved to the right and nearly struck a car parked on the side of the street.  Korb turned on his in-car video camera and followed the pickup as it turned south on 22nd Street and then east on Montana Avenue.  When Miller drove straight through an intersection while in a right-turn-only lane on Montana Avenue, Korb initiated a traffic stop.

¶3    Upon making contact with Miller, Korb observed that Miller was having difficulty sorting through some paperwork he had retrieved out of his glove box.  Miller initially gave a number of unresponsive answers to Korb's questions about where he was coming from and where he was headed, but Miller eventually stated that he had just come from Andy's Bar, where he had drunk roughly a pitcher of beer.  Korb noticed that Miller's speech was slurred, that his eyes were red and glossy, that he seemed unable to concentrate, and that his motor skills were diminished.  Miller was unable to provide

2

proof of liability insurance. In addition, a records check revealed that Miller's driver's license had been revoked.

¶4 Korb had Miller step out of the pickup, at which point Korb smelled the odor of an alcoholic beverage on Miller's breath. He asked Miller to attempt a number of field sobriety tests and observed that Miller swayed from side to side, had difficulty following Korb's instructions, and had difficulty maintaining his balance. Midway through the second test (the walk and turn), Miller stated that he did not want to continue with these tests. Korb then asked Miller to take a preliminary breath test, but Miller declined.

¶5 Based on Miller's driving, slurred speech, inability to concentrate, lack of balance, inability to follow Korb's instructions, and statements about drinking at Andy's Bar, Korb placed Miller under arrest for driving a motor vehicle while under the influence of alcohol or drugs ("DUI") and transported him to the Yellowstone County Detention Facility's DUI Center. While there, Miller declined to reattempt any of the field sobriety tests. Korb advised Miller of Montana's implied consent law (*see* § 61-8-402, MCA) and asked him to take a breath test, but Miller again refused.

¶6 The State charged Miller by information on February 17, 2006, with DUI, fourth or subsequent offense, a felony, in violation of § 61-8-401, MCA (Count I); driving while license suspended or revoked, a misdemeanor, in violation of § 61-5-212, MCA (Count II); and driving a motor vehicle without a valid policy of liability insurance in effect, a misdemeanor, in violation of § 61-6-301, MCA (Count III). Miller pleaded not guilty, and the case proceeded to trial on November 28, 2006, concluding the following day.

¶7    At the close of all the evidence, the District Court read 17 instructions to the jury. At issue on this appeal is Instruction No. 12, which was offered by the prosecution and stated as follows:

> **Refusal of a Breath or Blood Test or Physical Test.**
> If a person refuses to submit to a physical test or a test of their breath or blood for alcohol concentration, such a refusal is admissible evidence. You may infer from the refusal that the person was under the influence. The inference is rebuttable.

¶8    Miller objected to this instruction on the ground that it violated his Fifth Amendment right against self-incrimination and his right to due process under the Fourteenth Amendment.  Miller explained that in his view, this instruction undermined the other instructions regarding the State's burden of proof and placed on Miller the burden of having to prove his innocence by giving a breath test.  In response, the prosecutor argued that the instruction derived from § 61-8-404(2), MCA, and was not unconstitutional in light of this Court's decision in *City of Great Falls v. Morris*, 2006 MT 93, 332 Mont. 85, 134 P.3d 692.  The court ultimately overruled Miller's objection.

¶9    The jury found Miller guilty on all three counts, and the District Court sentenced him on January 8, 2007.  This appeal followed.

## ISSUE

¶10    The sole issue on appeal is whether the District Court erred in overruling Miller's objection to Instruction No. 12.

## STANDARD OF REVIEW

¶11    District courts have broad discretion in formulating jury instructions.  *State v. Archambault*, 2007 MT 26, ¶ 25, 336 Mont. 6, ¶ 25, 152 P.3d 698, ¶ 25.  However, that

4

discretion is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. *Archambault*, ¶ 25; *see also State v. Michaud*, 2008 MT 88, ¶ 16, ___ Mont. ___, ¶ 16, ___ P.3d ___, ¶ 16. Jury instructions that relieve the State of its burden to prove every element of the charged offense beyond a reasonable doubt violate the defendant's due process rights. *Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 2420 (1989) (per curiam); *see also State v. McCaslin*, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24. The issue of whether a defendant's due process rights were violated is a question of law. *McCaslin*, ¶ 14. Our review of a district court's conclusions of law is de novo; we determine whether the court's interpretation and application of the law were correct. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, ¶ 119, 167 P.3d 815, ¶ 119.

## DISCUSSION

¶12    Under § 61-8-404(1), MCA, the following may be admissible in a DUI trial: evidence of any measured amount or detected presence of alcohol, drugs, or a combination of alcohol and drugs in the defendant at the time of a test, as shown by an analysis of the defendant's blood or breath; a report of the facts and results of one or more tests of the defendant's blood or breath; and a report of the facts and results of a physical, psychomotor, or physiological assessment of the defendant. The statute places a number of conditions on the admissibility of such evidence. In addition, and of particular relevance here, § 61-8-404(1)(a), MCA, limits the use of a blood or breath test result as follows:

A positive test result does not, in itself, prove that the person was under the influence of a drug or drugs at the time the person was in control of a motor vehicle. A person may not be convicted of a violation of 61-8-401 based upon the presence of a drug or drugs in the person unless some other competent evidence exists that tends to establish that the person was under the influence of a drug or drugs while driving or in actual physical control of a motor vehicle within this state.

¶13 Section 61-8-404(2), MCA, in turn, states as follows:

If the person under arrest refused to submit to one or more tests as provided in this section, proof of refusal is admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs. The trier of fact may infer from the refusal that the person was under the influence. The inference is rebuttable.

¶14 In *City of Great Falls v. Morris*, 2006 MT 93, 332 Mont. 85, 134 P.3d 692, this Court analyzed § 61-8-404, MCA, as follows:

Analyzing this statute as a whole, we conclude that subsection (2) must be read as requiring the production of other competent corroborating evidence of a DUI. In light of the fact that subsection (1)(a) requires corroborating evidence when a person actually takes a drug test, to interpret subsection (2) as not requiring corroborating evidence when a person refuses to take the test would create an absurd result. In this case, the State presented corroborating evidence that Morris was driving while under the influence, including testimony from law enforcement that Morris exhibited erratic driving, slurred speech, red eyes and the odor of alcohol on his breath.

Moreover, we note that the admissibility of a defendant's refusal to take a breathalyzer test presupposes other competent evidence in the form of probable cause to make the arrest in the first instance—in this case, poor driving, slurred speech, red eyes and the odor of alcohol. Although Morris provides an explanation for his behavior and appearance, he has not challenged the probable cause to make the arrest.

*Morris*, ¶¶ 21-22. We thus held that the district court did not err in instructing the jury on the provisions of § 61-8-404(2), MCA.

¶15    In the District Court, Miller asserted that *Morris* was "wrongly decided." Again on appeal, Miller suggests that while *Morris* provides "a better understanding" of § 61-8-404(2), MCA, this statute "remains to be unconstitutional on its face." However, Miller offers no argument whatsoever in support of this contention, i.e., he offers no argument addressed to the reasoning of *Morris* and why he believes that reasoning is incorrect. The conclusory assertion that § 61-8-404(2), MCA, is "unconstitutional on its face" is a wholly inadequate presentation of an issue to this Court. *See* M. R. App. P. 23(a)(4) (2005), *superseded by* M. R. App. P. 12(1)f. (effective October 1, 2007[1]) ("The argument [section of the appellant's brief] shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on."); *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6 ("This Court has repeatedly held that we will not consider unsupported issues or arguments. Similarly, this Court is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." (citation omitted)); *cf. State v. Rosling*, 2008 MT 62, ¶ 66, 342 Mont. 1, ¶ 66, ___ P.3d ___, ¶ 66 (observing that Rosling's one-paragraph argument, with citation to inapt authority, "is too undeveloped to undertake a distinctive application of state constitutional principles"); *State v. Michaud*, 2008 MT 88, ¶ 51, ___ Mont. ___, ¶ 51, ___ P.3d ___, ¶ 51 (declining to revisit *Morris* based on Michaud's argument, which was the same argument, under the same basic facts, that we had considered and

---

[1] The briefs in this appeal were filed prior to October 1, 2007.

rejected in *Morris*). Accordingly, we will not consider Miller's contention in this regard any further.

¶16 Alternatively, Miller presents an argument that Instruction No. 12 was inadequate under our holding in *Morris*. As noted above, a positive blood or breath test result does not, in itself, prove that the defendant was under the influence of a drug or drugs at the time he or she was in control of a motor vehicle; and a person may not be convicted of a DUI under § 61-8-401, MCA, based upon the presence of a drug or drugs in the person unless "some other competent evidence exists that tends to establish that the person was under the influence of a drug or drugs while driving or in actual physical control of a motor vehicle within this state." Section 61-8-404(1)(a), MCA. In *Morris*, we construed § 61-8-404(2), MCA, in light of § 61-8-404(1)(a), MCA, and held that the former likewise requires the production of "other competent corroborating evidence of a DUI." *Morris*, ¶ 21; *accord Michaud*, ¶ 54 ("[T]he trier of fact must be [ ] presented with 'other competent evidence' that a defendant is driving while under the influence of alcohol."). In other words, proof of the defendant's refusal to submit to a blood, breath, physical, psychomotor, or physiological test does not, in itself, prove that the defendant was under the influence of a drug or drugs at the time he or she was in control of a motor vehicle; other competent corroborating evidence of a DUI must be presented.

¶17 Citing this requirement, Miller contends that Instruction No. 12 "was inadequate because it did not inform the jury that the State was required to provide other competent corroborating evidence, per *Morris*, in order to convict Miller of DUI." Miller acknowledges that the State provided corroborating evidence at his trial, but he opines

8

that "[i]t is a possibility that the jury ignored the corroborating evidence because the jury was never instructed that the State was required to present corroborating evidence, in order to convict Miller of DUI. Therefore, it is reasonable that Miller could have been convicted on the refusal to take a breath test alone."

¶18    The force of Miller's position is somewhat undercut by the fact that when the District Court overruled his objection to Instruction No. 12, he did not then ask the court to supplement the instruction with the requirement that he now cites from *Morris*, i.e., with language to the effect that proof of Miller's refusal to submit to a blood, breath, physical, psychomotor, or physiological test does not, in itself, prove that he was under the influence. Nevertheless, given our standard of review, we will consider whether Instruction No. 12 fully and fairly instructed the jury regarding the applicable law. *Archambault*, ¶ 25; *Michaud*, ¶ 16.

¶19    The crux of Miller's position is that the District Court failed to instruct the jury that the State had to produce "other competent corroborating evidence of a DUI," *Morris*, ¶ 21, and this failure had the effect of transforming the permissive inference allowed by § 61-8-404(2), MCA, into a mandatory presumption that he was under the influence.[2] According to Miller, this mandatory presumption, in turn, effectively shifted the burden of proof to him on this element of the offense, thereby violating his right to due process and the presumption of innocence. We disagree.

_____

[2] A permissive inference, also termed "permissive presumption," is "[a] presumption that a trier of fact is free to accept or reject from a given set of facts." *Black's Law Dictionary* 1224 (Bryan A. Garner ed., 8th ed., West 2004). A mandatory or "conclusive" presumption is "[a] presumption that cannot be overcome by any additional evidence or argument." *Black's Law Dictionary* 1223.

9

¶20     In *Michaud*, we held that "the inference language in § 61-8-404(2), MCA, allows the trier of fact—whether a judge or a jury—to accept or reject the inference. Additionally, it expressly allows the defendant to rebut the inference." *Michaud*, ¶ 54. Furthermore, we concluded that the inference permitted by § 61-8-404(2), MCA, "does not violate due process in that there is a rational connection between driving while intoxicated and refusing to take a sobriety test." *Michaud*, ¶ 55.

¶21     Here, Instruction No. 12 instructed the jury as follows: "If a person refuses to submit to a physical test or a test of their breath or blood for alcohol concentration, such a refusal is admissible evidence. You *may* infer from the refusal that the person was under the influence. The inference is rebuttable." (Emphasis added.) Nothing about this instruction *required* the jury to infer from Miller's refusal that he was under the influence. To the contrary, the jurors were told that they "may" infer from his refusal that he was under the influence. Thus, Instruction No. 12 was consistent with our interpretations of § 61-8-404(2), MCA, in *Morris* and *Michaud*.

¶22     Furthermore, as the State points out, the District Court provided the following instructions in addition to Instruction No. 12:

- "You are not to single out any sentence or any individual point or instruction, and ignore the others. You are to consider all of the instructions as a whole, and are to regard each in the light of all the others." (Instruction No. 1.)

- "The State of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt." (Instruction No. 6.)

- "The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is

10

guilty. The defendant is not required to prove his innocence or present any evidence." (Instruction No. 6.)

- "To convict the Defendant of the offense of driving while under the influence of alcohol and/or drugs, the State must prove the following elements: That the Defendant: 1. was driving or in actual physical control of a vehicle[,] 2. upon the ways of this state open to the public[,] and 3. while under the influence of alcohol and/or drugs. If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty. If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the Defendant not guilty." (Instruction No. 8; paragraph breaks omitted.)

¶23 Reviewing the instructions as a whole, as the court specifically directed the jury to do, we conclude that they fully and fairly instructed the jury regarding the applicable law and did not unconstitutionally shift the burden of proof to Miller. Of particular significance here, the jurors were instructed that Miller "is presumed to be innocent of the charge against him," that this presumption "remains with him throughout every stage of the trial," and that the presumption "is not overcome unless from *all the evidence* in the case you are convinced beyond a reasonable doubt that the defendant is guilty" (emphasis added). Furthermore, the jurors were instructed that "[t]he defendant is not required to prove his innocence or *present any evidence*" (emphasis added).

¶24 Based on these instructions, we conclude that while Instruction No. 12 did not inform the jurors that proof of Miller's refusal to submit to a blood, breath, physical, psychomotor, or physiological test does not, in itself, prove that he was under the influence of a drug or drugs at the time he was in control of a motor vehicle, the other instructions sufficiently compensated for this omission by requiring the jury to consider

11

"all the evidence" and by instructing them that Miller was not required to present any evidence.

¶25 Aside from the instructions, we also note Deputy Korb's testimony concerning the reasons he requests preliminary breath tests: "The breath test is to support any suspicions I may have, whether a person is under the influence or also whether they're not. If it's a situation where the [field sobriety] tests are close, I can use that to help support my beliefs whether they are intoxicated or not." With respect to this particular case, Korb testified that based on Miller's driving, slurred speech, inability to concentrate, lack of balance, inability to follow some of the field-sobriety-test instructions, and admissions about drinking that night, "I believed he was very intoxicated and I wanted to confirm it." Thus, Korb's own testimony suggested to the jury that the breath test was not, by itself, conclusive on the question of whether Miller was under the influence of alcohol but, rather, was only a tool to aid Korb in ascertaining whether this was, in fact, the case.

## CONCLUSION

¶26 For the foregoing reasons, we hold that Instruction No. 12, in conjunction with the other 16 instructions given by the District Court, fully and fairly instructed the jury regarding the applicable law. We further hold that § 61-8-404(2), MCA, as applied to Miller in this case, did not unconstitutionally shift the burden of proof to him.

¶27 Affirmed.

/S/ JAMES C. NELSON

12

We Concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE