JUSTICE NELSON,
concurring in part and dissenting in part.
¶45 While I generally agree with the Court’s resolution of Issues I, II, and III, I cannot join the Court’s ultimate disposition of this appeal. In my view, Russell’s conviction of felony homicide (Count I) is invalid. Consequently, I would reverse his conviction under Count I, affirm his conviction and sentence under Count II (aggravated assault), and not reach the double jeopardy and unanimity claims addressed by the Court under Issues I and III, respectively.
¶46 It is necessary at the outset to acknowledge the Court’s assertion that this issue was not raised or briefed in this appeal. Opinion, ¶ 25 n. 1. This is only partly true. Russell does assert in his argument under Issue III that the assault on Wallin and the killing of Gewanski were “two separate acts,” not “a continuous course of conduct.” See Opinion, ¶ 41. He fails, however, to develop this point. As a result, his argument is deficient under this Court’s rules concerning appellate briefs. See M. R. App. P. 12(1)f.; see also State v. Miller, 2008 MT 106, ¶ 15, 342 Mont. 355, ¶ 15, 181 P.3d 625, ¶ 15 (Conclusory assertions are “a wholly inadequate presentation of an issue to this Court.”).
¶47 On the other hand, Russell asserted during oral argument that a felony homicide had not occurred in this case. Furthermore, in response to a follow-up question from the Court, Russell explained: “I think the assaults on Mr. Wallin were completed and that, therefore, the assaults on the second individual who was asleep down the alley in a different place were not ‘in the course of those assaults.” Russell emphasized that this would be his position if he were permitted to argue it. (This Court’s order classifying the case for oral argument limited the parties’ arguments to the double jeopardy issue.)
¶48 But even if Russell committed a procedural misstep in challenging the validity of his felony homicide conviction, this Court has stated that “ ‘a serious error which appears on the face of [the] record is reviewable, although not presented by the parties’ if ignoring the error would cause substantial injustice.” State v. Andersen-Conway, 2007 *312 MT 281, ¶ 14, 339 Mont. 439, ¶ 14, 171 P.3d 678, ¶ 14 (brackets in Andersen-Conway) (quoting Kudrna v. Comet Corp., 175 Mont. 29, 51, 572 P.2d 183, 195 (1977)). We concluded in Andersen-Conway that it was necessary to “raise and decide the dispositive issue sua sponte,” since “incarceration of an individual pursuant to a facially invalid sentence represents a grievous wrong, and a miscarriage of justice that warrants relief even if the defendant is otherwise procedurally barred.” Andersen-Conway, ¶ 14. The same can be said here: Incarceration of Russell pursuant to a conviction that is plainly contrary to the evidence and the law represents a grievous wrong, and a miscarriage of justice that warrants relief even if he is otherwise procedurally barred from raising the point.
¶49 Indeed, review of Russell’s claim is compelled by this Court’s “overriding obligation to acknowledge and protect the substantial rights of litigants.” State v. Carter, 2005 MT 87, ¶ 13, 326 Mont. 427, ¶ 13, 114 P.3d 1001, ¶ 13. This obligation mandates that we not turn a blind eye to an invalid conviction simply because appellate counsel mounted an underdeveloped or procedurally bungled challenge thereto. In point of fact, this Court may consider a question which otherwise would be procedurally barred “if it relates to a substantial or fundamental right of a litigant.” Wolfe v. Dept. of Labor and Industry, 255 Mont. 336, 339, 843 P.2d 338, 340 (1992); accord Carter, ¶¶ 13-14; Cottrill v. Cottrill Sodding Service, 229 Mont. 40, 42, 744 P.2d 895, 896 (1987); Eastman v. Atlantic Richfield Co., 237 Mont. 332, 337, 777 P.2d 862, 865 (1989); see also State v. Finley, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996) (discussing this Court’s “inherent power and paramount obligation to interpret Montana’s Constitution and to protect the various rights set forth in that document”), overruled in part on other grounds, State v. Gallagher, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21. Here, on the record before us, it is plain that Russell’s fundamental right to due process is at issue and that it is necessary, therefore, for this Court to consider the legal validity of the felony homicide conviction.
¶50 In prosecuting Russell for felony homicide, the State’s theory was that the death of Gewanski occurred “in the course of’ the assault on Wallin. Section 45-5-102(1)(b), MCA. More specifically, the prosecutor alleged that Russell committed aggravated assault against Wallin and “then in the course of the offense of Aggravated Assault or flight thereafter,” he “stabbed, cut or otherwise assaulted [Gewanski], using a knife or other edged weapon, causing his death.” This theory is flawed as a matter of law, as there is no factual or legal basis *313 whatsoever supporting the proposition that the death of Gewanski was causally related to the assault on Wallin. To the contrary, the evidence suggests, as Russell contends, that these were two entirely distinct events.
¶51 According to the testimony at trial, Spotted Wolf slashed Wallin’s face and Russell stabbed Wallin several times in the back. The two then left Wallin and proceeded east through the alley. As Spotted Wolf explained in response to questioning by the prosecutor:
A. We were pretty much just going to go around to the other side [of the building] and just leave out to the North Side. I said-well, you know, we found out it was blocked off right there (indicating).
Q. And what happened then?
A. We stopped-well, you know, we stopped by that garbage can or that dumpster thing.
Q. Okay. What happened then?
A. Well, you know, we just stopped for, you know, not too long, we just stood there and then, you know, [Russell] went over here, and I don’t know what he was-you know, he was doing, he was hitting another person.
(The other person was Gewanski.) Thereafter, because their easterly route was blocked, Russell and Spotted Wolf proceeded back to where Wallin was. Upon reencountering him, they both started hittingWallin again-apparently for no reason other than that “we were just drunk.”
¶52 It is long-established in Montana that “for the felony-murder rule to apply a causal connection between the felonious act and the death must be present.” State ex rel. Murphy v. McKinnon, 171 Mont. 120, 127, 556 P.2d 906, 910 (1976); accord State v. Lester Kills on Top, 241 Mont. 378, 387, 787 P.2d 336, 342 (1990). In Murphy, we noted “with approval” the following guidelines as to the applicability of the felony-murder rule:
“For the felony-murder rule to apply, it is necessary that the homicide be a natural and probable consequence of the commission or attempt to commit the felony; that the homicide be so closely connected with such other crime as to be within the res gestae thereof; or the natural or necessary result of the unlawful act; or that it be one of the causes. * * *
“Something more than a mere coincidence of time and place between the wrongful act and the death is necessary. It must appear that there was such actual legal relation between the *314 killing and the crime committed or attempted that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it.”
Murphy, 171 Mont. at 126-27, 556 P.2d at 910 (quoting Wharton’s Criminal Law and Procedure, vol. 1, § 252, at 543).
¶53 Likewise, in State v. Weinberger, 206 Mont. 110, 671 P.2d 567 (1983), we quoted with approval the following statements by the Pennsylvania Supreme Court:
“The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. ‘It is necessary... to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony . . . and not merely coincidence.’ ”
Weinberger, 206 Mont. at 115, 671 P.2d at 569 (quoting Commonwealth v. Redline, 137 A.2d 472, 476 (Pa. 1958)) (ellipses in Redline).
¶54 Accordingly, we have said that in order to establish felony homicide, the State must prove that the death was “an outgrowth of the [predicate] felony itself and related to the [predicate felony] by an unbroken chain of causation.” State v. Sunday, 187 Mont. 292, 307, 609 P.2d 1188, 1197 (1980). We have also relied on § 45-2-201, MCA, in articulating the “causal relationship” that must be shown in order to prove felony homicide. See e.g. Weinberger, 206 Mont. at 114-15, 671 P.2d at 569; State v. Turner, 265 Mont. 337, 348, 877 P.2d 978, 984-85 (1994). This statute states, in pertinent part: “Conduct is the cause of a result if... without the conduct the result would not have occurred.” Section 45-2-201(1)(a), MCA (paragraph break omitted).
¶55 Given the law as stated above, the charge of felony homicide in this case is not supported by the facts established at trial. As a matter of fact, it is not even supported by the allegations set out under Count I of the Amended Information. Indeed, there is simply no causal connection at all between the aggravated assault on Wallin and the death of Gewanski. Russell and Spotted Wolf completed their assault on Wallin. They then decided “to go around to the other side [of the building] and just leave”; however, their passage through the east end of the alley was blocked. But rather than turn around and leave through the west end of the alley where they had entered, they “just stopped for, you know, not too long, [they] just stood there.” Obviously, this cannot be construed as “flight” from the assault on Wallin. Section 45-5-102(1)(b), MCA. At that point, Russell attacked and killed Gewanski, who had been sleeping next to a dumpster. Thereafter, he and Spotted Wolf walked back to where Wallin was and ended up *315 assaulting him again.
¶56 While these events may constitute “the same transaction” for purposes of § 46-11-410(1), MCA, they do not support the proposition that a causal connection existed between the aggravated assault on Wallin and the death of Gewanski. The death of Gewanski was in no way “a natural and probable consequence” or “the natural or necessary result” of the assault on Wallin. Nor can it be said that “the conduct causing death was done in furtherance of the design to commit the [aggravated assault]” or that the killing “occurred as a part of the perpetration of the [aggravated assault], or in furtherance of an attempt or purpose to commit it.”
¶57 “The mere coincidence of [a] homicide and [a forcible] felony is not enough to satisfy the requirements of the felony-murder doctrine.” Weinberger, 206 Mont. at 115, 671 P.2d at 569 (internal quotation marks omitted). “Something more than a mere coincidence of time and place between the wrongful act and the death is necessary.” Murphy, 171 Mont. at 127, 556 P.2d at 910 (internal quotation marks omitted). While it may be debated whether the assault on Wallin and the death of Gewanski were more than mere coincidence, there is absolutely no basis for concluding that they were causally related or connected.
¶58 For the foregoing reasons, I conclude that the prosecutor improperly charged felony homicide in this case and that Russell’s conviction is invalid as a matter of law. In reaching this conclusion, it is necessary to acknowledge that “when the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion.” State ex rel. Fletcher v. District Court, 260 Mont. 410, 415, 859 P.2d 992, 995 (1993). At the same time, however, whether an offense is properly charged, given the facts, and whether a conviction is legally sustainable, given the evidence, are legal questions which this Court must decide. See e.g. State v. McWilliams, 2008 MT 59, ¶¶ 19-39, 341 Mont. 517, ¶¶ 19-39, 178 P.3d 121, ¶¶ 19-39. Here, the facts as alleged by the prosecutor and established at trial cannot, as a matter of law, support the charge of felony homicide.
¶59 Had this case been properly charged-deliberate homicide under § 45-5-102(1)(a), MCA, for the death of Gewanski and aggravated assault under § 45-5-202(1), MCA, for the serious bodily injury inflicted on Wallin-then the State would have two convictions for two separate acts. As it is, however, under the Court’s resolution of Issue I, the State has only one conviction for the two acts.
¶60 In sum, §§ 46-11-410(2)(a) and 46-1-202(9)(a), MCA, would *316 preclude Russell’s conviction on the aggravated assault charge if he were lawfully convicted on the felony homicide charge. Opinion, ¶¶ 20-25. But because the felony homicide charge is not supported by the facts as alleged by the prosecutor and proved at trial, I conclude that the aggravated assault charge can stand. Thus, I would reverse Russell’s conviction under Count I and affirm his conviction and sentence under Count II.
¶61 I concur and dissent.